215 S.W.3d 376 (2006)
In re C.A.R.
Court of Appeals of Tennessee, Middle Section, at Nashville.
August 16, 2006 Session.
August 30, 2006.
Order on Denial of Rehearing September 11, 2006.
Permission to Appeal Denied January 29, 2007.
*377 Ben H. Cantrell, Nashville, Tennessee, for the appellant, K.M.A.
Brad W. Hornsby and Kerry Knox, Murfreesboro, Tennessee, for the appellee, J.W.R.
Alan W. Scheflin, Santa Clara, California, and Dan R. Alexander, Nashville, Tennessee, for the Amicus Curiae, The Leadership Council on Child Abuse & Interpersonal Violence.
FRANK G. CLEMENT, JR., J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S., and PATRICIA J. COTTRELL, J., joined.
Permission to Appeal Denied by Supreme Court January 29, 2007.

OPINION
In this domestic litigation regarding visitation, contempt and custody, the mother of the parties' only child contends inter alia the trial court erred by not transferring the case to Davidson County pursuant to Tenn.Code Ann. § 36-5-3003, and the evidence preponderates against the finding it was in the best interests of the child to change custody. We have determined the evidence preponderates against the trial court's pivotal findings and the conclusions based thereon. We have also determined that none of the parties have resided in Wilson County during the pendency of this litigation; therefore, as the mother has requested, the case should be transferred to Davidson County pursuant to Tenn. Code Ann. § 36-5-3003.
The mother and father of the child at the center of this controversy had a brief relationship which ended prior to the *378 child's birth in September of 2000. At the time of the child's birth, the mother resided in Wilson County, and the father resided in Davidson County. The mother and child lived in Wilson County until 2002, when they moved to Davidson County with the mother's new husband. In early 2003, the child moved with her mother and stepfather to Indiana. Soon thereafter, on May 14, 2003, the father filed a Petition to Establish Parentage in the Wilson County Circuit Court, the first in a series of very contentious pleadings and proceedings in this action. The child was three years old at the time.
Neither the father, mother, nor the child resided in Wilson County when the parentage action was commenced. Nevertheless, the mother admitted the Wilson County Circuit Court had jurisdiction and that it was the proper venue for the dispute. Thereafter, the Wilson County Circuit Court established the father's parentage, awarded custody to the mother, granted visitation with the father, and ordered that he pay child support.
The mother and child moved back to Davidson County, Tennessee from Indiana in 2004. In May of 2004, the child's pediatrician in Tennessee referred him for therapy because of severe separation anxiety, behavioral difficulties and psychosomatic symptoms related to stress, including stomach cramps and vomiting for which there was no medical diagnosis. During a therapy session, the child alleged that he had witnessed sexual activity between the father and his wife, the child's stepmother. During the same session, the child told the therapist the father had touched him inappropriately, which the therapist reported to the mother and to the Tennessee Department of Childrens' Services, as required by law.[1] Thereafter, the mother occasionally denied the father's visitation with the child and on other occasions restricted the visitation.
As a consequence of the interference with his visitation, the father filed the first in a series of motions and petitions in June of 2004 to hold the mother in contempt. He also sought a change of custody. The mother answered, contending her interference with the father's visitation was due to her concerns for the child's welfare. She also sought to terminate or restrict his visitation to supervised visitation.
One month later, in July of 2004, the mother contested the jurisdiction of the Wilson County Circuit Court and contended it was not the proper venue. The court rejected the mother's contentions regarding jurisdiction and venue and stated it would retain jurisdiction and preside over the matter until all issues were resolved.
Six months later, in January of 2005, the mother requested the case be transferred, pursuant to Tenn.Code Ann. § 36-5-3003, to Davidson County. At the time of the transfer request, the mother and child resided in Davidson County, where they had moved from Indiana, and the father resided in Rutherford County. The grounds for her transfer request were that she and the child had resided in Davidson County for more than six months, and none of the parties resided in Wilson County. Shortly thereafter, in February of 2005, the trial court denied the requested transfer and stated the father's motion for contempt would not be heard until he filed the proper pleadings. Subsequently, the father *379 filed an Amended Petition for Contempt on February 25, 2005. Following an evidentiary hearing in August on the petitions to change custody and to hold the mother in contempt, the trial court found the mother in contempt on four counts. It also changed custody and awarded custody to the father on the ground the father had not sexually abused the child as the mother had claimed and that the best interests of the child required a change of custody due to what the trial court characterized as the mother's instability. The trial court additionally assessed the father's attorney fees incurred in pursuing the contempt charges against the mother.

II.

VISITATION, CONTEMPT AND CUSTODY
The trial court's rulings on visitation, contempt and custody hinged almost entirely on whether or not the allegations of sexual activity between the father and the child were or were not credible. In spite of the fact two professionals opined that sexual abuse likely occurred, the trial court made a definitive finding that "no sexual abuse occurred." The trial court based its ruling on its interview of the child. In its ruling, the trial court explained that it "observed the [four and one-half year old] child's demeanor and determined that the minor child was truthful with the Court on all occasions," referring to the declaration by the child in the interview that his numerous statements claiming his father had engaged in sexual activity with him had been lies.
These findings, which are at the heart of the case and had a significant ripple effect on all other rulings by the trial court, were based almost entirely on the trial court's interview of the four and one-half year old child. This is evident from the trial court's statement at the conclusion of the trial, "There's nothing that has been said by anybody that is going to overcome what that child said to me."
Based upon these findings, the trial court also concluded that numerous material and substantial changes of circumstances occurred, principally the mother's interference with the father's visitation, and that it was in the best interest of the child that the court change primary residential parental responsibility from the mother to the father. The mother admitted interfering with and at times preventing the father's visitation, explaining her actions were based upon many factors, including the opinions of two professionals that it was probable the child had been abused by the father.
We reviewed the record, including specifically the transcript of the trial court's interview of the child and the opinions of professionals to whom the child was sent for evaluation,[2] and find the evidence simply does not support the findings by the trial court that are pivotal to the issues of custody, visitation, contempt and attorney fees. Finding the evidence preponderates against the trial court's findings and the *380 conclusions based thereon, we therefore vacate the judgment of the trial court concerning the issues of custody, visitation, contempt and attorney fees.

IV.

TRANSFER OF CASE
The mother requested the case be transferred to Davidson County, where she and the child have lived for more than six months. None of the parties have lived in Wilson County since early 2003. The Tennessee General Assembly mandated that a case that includes child support or custody provisions "must be transferred" to a court of competent jurisdiction in the county where the child resides if neither the child, custodial parent, nor the non-custodial parent currently reside in the county where the action is pending, and the child has resided in the county to which the case is to be transferred for at least six months. Tenn.Code Ann. § 36-5-3003(a) and (b).
Since we have vacated the judgment of the trial court, all matters in dispute are back at square one. Accordingly, there is no reason to delay transferring the case to Davidson County as required by Tenn. Code Ann. § 36-5-3003.

V.

CUSTODY AND VISITATION ON REMAND
Since we have vacated the judgment of the trial court as to custody and visitation, we remand with instructions to the Wilson County Circuit Court to immediately restore custody to the mother pursuant to the permanent parenting plan in effect prior to the change of custody mandated in August of 2005, with visitation to be governed by the prior parenting plan.

VI.

IN CONCLUSION
We therefore vacate the judgment of the trial court and remand this matter to the Circuit Court of Wilson County to act expediently pursuant to the foregoing instructions. Costs of appeal are assessed against the father, J.W.R.
NOTES
[1] Due to the sensitivity of these matters, and recognizing that our ruling hinges on the trial court's interview of the child, not the specifics of the statements of the child to the therapist, and thereafter to the mother and the psychologist, we find it unnecessary to discuss in detail the substance of the child's statements to the therapist, the mother and the psychologist.
[2] The child's pediatrician referred him to a psychologist in May of 2004, due to behavioral problems/stress when the child was three and one-half years old. The child told the therapist of sexual conduct by the father, which the therapist reported to the Tennessee Department of Childrens' Services. In December of 2004, after the child again spoke of sexual activity with the father, DCS sent him to a clinical psychologist who concluded the child had been sexually molested by the father. The psychologist concluded the father had molested the child and made findings that the child's explanations were too graphic to have been fabricated or coached. The psychologist recommended that visitation be supervised and that the father have a psychosexual evaluation. The father refused to be evaluated.